[Black, et al. v. W. T. Smith L. Co.]

# Black, *et al. v.* W. T. Smith L. Co.

## *Tresspass to Realty.*

(Decided November 21, 1912.  60 South. 154.)

1. *Appeal and Error; Harmless Error; Pleading.*—Where the court sustained demurrer to three counts of the complaint, all of which set up matters that were litigated under the two remaining counts of the complaint, the error, if any, was without injury.

2. *Pleading; to the Merits.*—A plea to the merits must either specifically deny the cause of action set up in the complaint, or must confess such cause and set up matter which will avoid it.

3. *Same; Essentials.*—A plea must state facts and not present a mere argument.

4. *Same; Sufficiency.*—Where a plea is filed to the whole of the complaint containing several counts, the plea is demurrable unless it is a sufficient answer to each count.

5. *Trespass; Evidence; Directing Verdict.*—Where the evidence disclosed legal title and possession in the plaintiff at the time of the trespass, the defendant was not entitled to have the verdict directed for him in an action for damages for trespass in cutting and removing trees, although the evidence was conflicting as to whether plaintiffs bought the land with the knowledge that the timber had been sold to the defendant.

6. *Same.*—Where the action was for damages for trespass for cutting trees and removing them, and there was evidence, that the land was only worth one-half as much after the trees were cut than before, the defendant was not entitled to have the verdict directed on the ground that the evidence of damage was too uncertain to sustain a verdict.

7. *Trover and Conversion; Directing Verdict.*—Where the evidence showed that the defendant's title to pine trees alleged to have been cut and removed from the land was superior in equity to that of the plaintiffs, but there was some evidence of the taking of trees other than pine trees, and it appeared that plaintiffs' title to such other trees was better than that of defendant, defendant was not entitled to have the verdict directed.

APPEAL from Crenshaw Circuit Court.

Heard before Hon. A. E. GAMBLE.

Action by M. E. Black and another against the W. T. Smith Lumber Company.  From a judgment for defendant, plaintiffs appeal.  Reversed and remanded.

The pleas were: (1) "That the cause of action was barred by the statute of limitation of ten years." (2) "That the defendant and those under whom they claim have been the owners of and in the adverse possession of the saw pine timber 12 inches and up at the stump on the lands described in the complaint, claiming the same as its own, since March 2, 1889, and that, if defendant cut other logs than said pine timber so described, it says it had a right to do so by virtue of a deed to it and those under whom it claimed to said timber, and in said deeds so conveying said timber there was a clause giving the defendants the right to build or construct right of ways for wagons, carts, and tram roads, and that, if it cut any other trees than those conveyed to it, it was necessary to do so to enable it to cut and remove said pine timber."

M. W. RUSHTON, for appellant. No brief reached the Reporter.

F. B. BRICKEN, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—The original complaint consisted of two counts. These counts were for damages for a trespass to realty. To this complaint three other counts in trover were added by amendment, but the court sustained a demurrer to these three additional counts. Thereupon the plaintiffs further amended their complaint by the addition of two other counts in trover. These counts allege the wrongful conversion by the defendant of certain logs, the property of the plaintiffs, and as all of the matters set up in the three counts, to which demurrers were sustained, could have been and were actually litigated by the parties under these last

[Black, et al. v. W. T. Smith L. Co.]

two counts in trover, we will not stop to inquire whether the three counts to which demurrers were sustained were subject to the demurrers which the defendant interposed to them. The plaintiffs were not injured by their absence from the complaint.

2. There were several pleas to the complaint as amended. The general rule is that a plea to the merits of a case must either specifically deny the cause of action set up in the complaint or it must confess the cause of action and set up matters which will legally avoid the cause of action so confessed. A plea must also state facts, and must not present a mere argument. It is also a rule that when a plea is filed as an answer to a complaint as a whole, and the complaint contains several counts, the plea is subject to demurrers, if it is not an answer to each count of the complaint. We refer to these general rules, because some of the pleas to which the plaintiffs demurred offended them, and, as this cause must be reversed on its merits, the objectionable pleas, on the next trial of this case, if one is had, can be so amended as to meet the above well-known rquirements.

3. The plaintiffs (appellants here) brought this suit against the defendant, the W. T. Smith Lumber Company (appellee here), to recover damages which the plaintiffs claim that they suffered because said Lumber Company went upon their land in the year 1909 and cut and removed therefrom a lot of pine, oak, dogwood, and gum logs. It appears from the evidence that the plaintiffs, in November, 1899, went upon the land in question and resided there until after the alleged cause of action arose. W. T. Shows and wife, on November 27, 1899, executed to the plaintiffs a bond for title to the land, wherein they contracted to execute and deliver to the plaintiffs a conveyance to said land upon

the payment by the plaintiffs of certain notes which are described in said bond for title. In the year 1905, all of the notes described in the bond for title having been. paid by the plaintiffs, the said Shows and wife executed and delivered to them a conveyance to said lands in fee simple. This conveyance contains a clause expressly warranting that the lands conveyed were free from all incumbrances and that the title conveyed was absolute in fee simple. We find in the record a warranty deed from W. A. Johnson and L. M. Johnson to Shows to said land, dated November 27, 1899, and a quitclaim deed from S. C. Freeman to W. A. Johnson and L. M. Johnson, dated January 21, 1897, and which was recorded on January 22, 1897, in the county in which the lands were situated. Freeman was residing on the land when Shows made the above bond for title to the land to the plaintiffs, and, while Freeman testified that he did not remember to have executed the above deed to W. A. Johnson and L. M. Johnson, the deed from W. A. Johnson and L. M. Johnson to Shows recited that it was made on the order of Freeman. Of course, when Freeman executed and delivered the deed to W. A. and L. M. Johnson to said land on January 21, 1897, any title that he then had to said land passed into said W. A. and L. M. Johnson, and if they ever reconveyed to Freeman, or if Freeman in any other way again obtained title to the land, the evidence in this case fails to disclose it. Freeman appears to have remained in possession of the land, and there is much to indicate that he continued to claim the land as his own, and to exercise acts of ownership over it, after he made the deed to W. A. and L. M. Johnson, and until the plaintiffs went into possession of it. In fact, we think it reasonably apparent from the evidence that, while the plaintiffs received their title to the land through Shows,

Freeman received the purchase money. Freeman made a deed of the pine trees of certain dimensions on the land to F. M. Billings on March 2, 1899, more than two years *after* he had made the above deed to W. A. and L. M. Johnson. The above-named Billings and wife, in September, 1899, conveyed the said trees to one Kohn, and on the same day Kohn conveyed the trees to the defendant. It also appears that *Shows quitclaimed* his interest in the said trees to Billings on March 2, 1899; but if Shows then had *any interest* in said trees the evidence fails to show how or when he obtained it. The above conveyances were all properly recorded *before* the deed from Shows to the plaintiffs was executed. Of course, the *quitclaim deed* of Shows to the trees could not and did not in any way affect the title which Shows *subsequently* obtained to the land (and the trees growing upon it) under the warranty deed from W. A. Johnson and L. M. Johnson, and which title he subsequently, by a warranty deed, conveyed to the plaintiffs.

The plaintiffs therefore claimed title to the land described in the complaint (and the trees growing on that land) through the following conveyances: (1) A quitclaim deed from S. C. Freeman to L. M. and W. A. Johnson, dated January 21, 1897, and *recorded* on January 22, 1897; (2) A warranty deed from L. M. and W. A. Johnson to Shows, dated November 27 1899; (3) a warranty deed from Shows and wife to the plaintiffs, dated December 14, 1905. The defendant claimed title to the *pine trees* of certain dimensions, and certain other privileges on said lands, through the following conveyances: (1) A warranty deed from S. C. Freeman to Billings, dated March 2, 1899; (2) a quitclaim deed from Shows and wife to Billings, dated March 2, 1899; (3) a warranty deed from Billings to Kohn, delivered in September, 1899; (4) a warranty deed

from Kohn to defendants, dated September 20, 1899. All of the above deeds through which the defendant claimed its title to the trees were recorded, and operated as constructive notice of their existence to the plaintiffs when they acquired title to the land in 1905. Freeman was the common source of title to both the plaintiffs and the defendant, and if all of the deeds touching the property were introduced in evidence, it is evident that the plaintiffs, by their deed from Shows, acquired the legal title to the land and to the trees on the land.

The plaintiffs' testimony tends to show that they took possession of the land under the bond for title in November, 1899, and continued in possession until the defendant came upon the land and cut and removed the trees, and that at no time did they recognize the defendant's claim to the timber. In fact, there is nothing to show that the defendant at any time made any claim to the timber until its servants went upon the land and cut and removed the trees. There is evidence, however, tending to show that, when the plaintiffs made the trade with Shows for the land and obtained the bond for title, they did so with full knowledge of the fact that the timber had been sold to the defendant and that this fact was also known to them when Shows delivered the deed. This, however, the plaintiffs denied. However this may be, we think it is evident that the defendant, under the evidence in this case, was not entitled to the general affirmative charge which the court gave to the jury at its written request. So far as the evidence in the bill of exceptions discloses, the legal title to the land, the trees upon the land, and the possession of the land were in the plaintiffs at the time of the alleged trespass.

4. The defendant, in the brief of its counsel, says: "The trial judge gave the affirmative charge because the evidence offered by the appellants in the court below was so uncertain as to the damages, if any, and the amount thereof sustained by them, that the jury would have nothing upon which an intelligent verdict could be based." The first two counts were in trespass. The testimony of the plaintiffs tended to show that the lands upon which the alleged trespass was committed consisted of not less than 50 acres. Some of the evidence of the plaintiffs tended to show that said lands, *before* the trees were cut from the land, were worth $15 per acre, and that *after* they were cut from the lands, the lands were worth only $7.50 per acre. This seems to have been evidence which the jury might have considered on the subject referred to, and, if believed by them, it might have furnished them with a reasonable basis for the measurement of the plaintiffs' damages under said two counts.

5. The last two counts were in trover. Trover is an equitable action, and conceding, for the sake of argument, that under *these counts* the evidence developed on the trial showed that the defendant's title to the pine trees was, in equity, superior to that of the plaintiffs' and that the plaintiffs were not entitled to recover their value, nevertheless there was *some* evidence—the value and weight of which was for the jury—upon which the jury *might* have rested a verdict for the plaintiffs. It is not, under any aspect of this case, contended by the defendant that it had the right to cut and *remove* from the lands any trees other than *pine* trees of certain dimensions. It contends, and offered evidence tending to show, that it *removed* no trees from the lands, except pine trees. On this subject, however, a witness, John W. Turner, testified, as follows: "There were 1,339

pine trees cut, 136 oak trees, 80 dogwood trees, and 36 gum trees cut and moved away. * * * In my judgment, to cut the *other stuff* and leave the pine timber there, the damage to the land would have been $3 per acre on 50 acres of land." The "other stuff" to which this witness referred might well have been accepted by the jury as the value placed by this witness on the oak, dogwood, and gum trees "cut and moved away" from the lands by the defendant. While the testimony of this witness may have been confused and uncertain, and while it may have been contradicted in many ways, it was for the jury, and not the court, to say whether this witness spoke the truth and what value should be given to his testimony, either as a whole or as to any of its parts.

It seems clear, therefore, that under the evidence set out in the bill of exceptions the defendant was not entitled to the affirmative charge which the trial court, at the defendant's written request, gave to the jury.

Reversed and remanded. All the Justices concur.